**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **EMMITT DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:17-CV-12 (MTT)** |
| | ) | |
| **LAKAY ENTERPRISES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Defendant Lakay Enterprises, Inc. has moved for summary judgment.  Doc. 11.

Additionally, Plaintiff Emmitt Davis has moved to voluntarily dismiss his complaint

pursuant to Fed. R. Civ. P. 41(a)(2).  Doc. 18.  For the reasons stated below, Lakay's

motion is **GRANTED**, and Davis's motion is **DENIED**.

## I. VOLUNTARY MOTION TO DISMISS

On December 13, 2016, Davis filed this lawsuit against his former employer,

Lakay, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

*et seq.*, along with other state law claims.[1]  *See generally* Doc. 1-1.  On January 10,

2017, Lakay removed the case to this Court from the Superior Court of Peach County,

Georgia.  Doc. 1.  The parties have completed discovery, and Lakay has filed a motion

for summary judgment, which has been fully briefed.  But Davis now moves to

voluntarily dismiss his complaint without prejudice pursuant to Rule 41(a)(2), alleging

---

[1] Davis timely filed a charge of discrimination with the Equal Employment Opportunity Commission, and the EEOC found a reasonable basis for a claim of discrimination. Doc. 11-13 at 26-27.

that he can no longer financially afford to prosecute this action.  *See generally* Doc. 18.

Lakay opposes the dismissal.  *See generally* Doc. 19.

The Eleventh Circuit has stated:

> A voluntary dismissal without prejudice is not a matter of right. *Zagano v. Fordham University,* 900 F.2d 12, 14 (2d Cir.1990); Fed. R. Civ. P. 41(a)(2).  Although we have said that in most cases a voluntary dismissal should be allowed unless the defendant will suffer some plain prejudice other than the mere prospect of a second lawsuit, *see Durham v. Florida East Coast Ry. Co.,* 385 F.2d 366, 368 (5th Cir.1967), the decision whether or not to grant such a dismissal is within the sound discretion of the district court and reviewable only for abuse of discretion, *see LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5th Cir.1976).  And, when exercising its discretion in considering a dismissal without prejudice, the court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants. *See id.*

*Fisher v. Puerto Rico Marine Mgmt., Inc.*, 940 F.2d 1502, 1502–03 (11th Cir. 1991).

"The crucial question to be determined is, would the defendant lose any substantial right by the dismissal."  *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (citation omitted).  The Eleventh Circuit has not provided specific factors to be considered, but courts focus on whether a defendant would suffer "plain prejudice" or merely the "prospect of a second lawsuit."  *Id.*  When denying a plaintiff's request for dismissal, courts "weigh the relevant equities and do justice between the parties."  *See, e.g.*, *Stephens v. Ga. Dep't of Transp.*, 134 F. App'x 320, 323 (11th Cir. 2005) (quoting *Potenberg*, 252 F.3d at 1255-56).

Lakay argues dismissal without prejudice would be improper in light of time and resources expended litigating this action, and points out that Davis and his attorney have entered into a contingency-fee arrangement in which Davis is not required to pay

any fees unless he is awarded damages or a settlement for his claim.  Doc. 19 at 4-7.

In his reply, Davis does not dispute this assertion, but, instead, he only contests Lakay's

arguments that if Davis's motion is granted, it should be with prejudice or that conditions

should be imposed on the dismissal.  *See generally* Doc. 21.  Thus, from the response

and reply, Davis's asserted reasons for dismissal in his motion appear to be

disingenuous.  Rather, it appears the true intention behind Davis's motion is to avoid an

unfavorable ruling on Lakay's motion for summary judgment.

Moreover, as Lakay argues, Lakay would be prejudiced by dismissal because it

has expended significant time and resources in this litigation.  Doc. 19 at 5-7.  As

stated, the parties have completed discovery, including Lakay's deposition of both Davis

and Lakay's corporate representative.  Docs. 11-10; 11-12.  And Davis's argument that

there has been nothing out of the ordinary about discovery, like his stated reason for

dismissal, is disingenuous.  Yes, there were no extensions of time for discovery.  But

twice the Court needed to hold a hearing regarding discovery disputes, which were in

no small part the fault of Davis's counsel and required Lakay to expend time and

resources.  Docs. 7; 8.  The Court held a telephone conference on May 25, 2017 and a

June 2, 2017 hearing that the parties were required to attend.  *Id.*  Indeed, after the

hearing, the Court was compelled to order Davis's counsel to "give complete, verified

responses to Defendant's discovery requests."  Doc. 8.  And, as stated, in addition to

the time and resources expended in discovery, Lakay has filed a summary judgment

motion that has been fully briefed.

For these reasons, the Court finds Lakay would suffer prejudice if the complaint

were dismissed without prejudice pursuant to Rule 41(a)(2).  Accordingly, Davis's

motion to dismiss (Doc. 18) is **DENIED**.

## II. SUMMARY JUDGMENT MOTION

Lakay has moved for summary judgment on all of Davis's claims. A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit. *Id.* at 248. And a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Id.* (citation omitted). Accordingly, "the mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001) (citation and punctuation marks omitted).

The party moving for summary judgment bears the burden to show that there is no issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may make this showing by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that the non-movant cannot produce admissible evidence to support the issue of material fact. Fed. R. Civ. P. 56(c)(1). If the movant meets this burden, the non-moving party must

produce evidence showing that an issue of material fact does exist. *Celotex Corp.*, 477 U.S. at 324. To do so, the non-moving party must "go beyond the pleadings" and identify "specific facts showing a genuine issue for trial." *Id.*; *see also* Fed. R. Civ. P. 56(e)(2)-(3). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255 (citation omitted).

## A. Facts[2]

Davis began working for Lakay as a cement finisher in January, 2013. Docs. 11-4 ¶ 8; 11-10 at 61:6-14. While working for Lakay, he worked on an all-male work crew. Docs. 11-2 ¶¶ 20-21; 11-4 ¶ 12. In September, 2013, Davis met with Billy Crump, the

---

[2] Unless otherwise stated, all facts are undisputed. In response to Lakay's motion for summary judgment, Davis submitted the following: a three-page memorandum in opposition to Lakay's motion (Doc. 13), consisting only of an introductory paragraph, a one-sentence statement of the summary judgment standard, and a certificate of service; a two-sentence response to Lakay's material facts (Doc. 13-1); and a September 27, 2013 "Event Report" from the Houston County 911 (Doc. 13-2). In his memorandum, Davis made no attempt to dispute the facts or respond to the arguments asserted in Lakay's motion. *See generally* Doc. 13. After his initial response, Davis attempted to file a second response, which was the same in substance except an irrelevant article from the *Atlanta Journal-Constitution* was attached. Doc. 15. The Court sustained Lakay's objection to this evidence. Doc. 17.

Thus, Davis has "fail[ed] to properly support an assertion of fact [and] fail[ed] to properly address [Lakay]'s assertion of fact as required by Rule 56(c)," and, accordingly, "the court may . . . consider [those] facts undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Further, Local Rule 56 states "[a]ll material facts contained in the movant's statement [of material facts] which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56. Rather than responding to each of Lakay's numbered material facts, Davis's response merely lists enumerated facts to which there is no genuine issue for trial. *Id.* Accordingly, those material facts asserted by Lakay, "which [Davis has] not specifically controverted by specific citation to particular parts of materials in the record," are deemed to be admitted pursuant to Local Rule 56. However, as required, the Court has "still review[ed] the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008).

Moreover, Davis has failed to respond to Davis's legal arguments, deeming the motion for summary judgment, essentially, unopposed. But despite the motion being essentially unopposed, the Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Accordingly, if evidence in the record shows that a fact is disputed, the Court draws all justifiable inferences in Davis's favor for purposes of summary judgment.

president and CEO of Lakay, to complain about harassment from a coworker, Ty Beck. Docs. 11-4 ¶ 14; 11-12 at 52:14-19 110:20-113:6. Davis complained he was subjected to homophobic slurs, taunting, and unwanted touching, including Beck trying to "fight [Davis] and tr[ying] to feel on [Davis]." Docs. 11-4 ¶ 14; 11-10 at 112:20-114:10. Davis provided no other details to Crump. Docs. 11-10 at 90:1-16; 11-12 at 114:3-10.

Prior to Davis's complaint, neither Crump nor Gray had received complaints concerning Beck from any other employee. Docs. 11-4 ¶ 13; 11-6 ¶ 5. Crump met with Beck, who admitted "he flicked [Davis] on the chest near the pocket of his shirt and lightly tapped [Davis] on his rear end" but claimed it "was all in good fun and was not intended to be harassing." Doc. 11-4 at ¶ 15. Still, Crump admonished him for the behavior, telling him that he would be terminated if it continued. Id. ¶ 16.

Several days later, on September 27, 2013, while at a job site, Beck came to Davis "fussing and cussing, asking [Davis] why did [Davis] tell [Crump] about him touching and grabbing on [Davis]." Doc. 11-10 at 89:12-25, 99:2-12. In his deposition, Davis admitted that Beck did not actually touch him that day but did confront him and threaten to "whup [Davis's] ass." Id. at 86:1-23, 89:12-25, 91:17-19, 93:18-20, 98:22-99:12, 100:10. Regardless, Davis called the Houston County Sheriff's Department to report a "simple assault slash battery" and reported to the 911 dispatcher that Beck had called him "gay," although in his deposition he could not recall if this was the case. Id. at 84:17-19, 86:1-23, 93:2-25. Crump arrived at the scene around the same time as a sheriff's deputy, and, after the parties had calmed down, the officer told Davis he could charge Beck at the courthouse if he so wished. Docs. 1-1; 11-4 ¶ 21; 11-12 at 117:1-5. Meanwhile, Crump told both Beck and Davis to go home for the weekend and that they

would discuss the incident the following Monday.  Docs. 11-4 ¶¶ 22-23; 11-10 at
101:21-25; 11-12 at 118:19-25.

During their meeting that following Monday, Crump assigned Beck and Davis to
different work crews.  Docs. 11-4 ¶ 23-25; 11-6 at ¶¶ 7; 11-10 at 109:2-6; 11-12 at
118:21-119:1.  Davis claims that at the meeting, Crump told him, "If you go to court,
don't come back."  Doc. 11-10 at 102:13-16.  But Crump denies making that comment,
and, although Davis believed others were around to hear that comment, including
Malcolm Radford, Gonzalo Lopez, and Larry Perry, those individuals testified that they
did not recall this comment.  Docs. 11-4 ¶ 24; 11-6 ¶ 11; 11-7 ¶ 7; 11-8 ¶ 5; 11-9 ¶ 5;
11-10 at 102:21-103:8; 11-12 at 150:16-151:22.[3]

Nevertheless, a few days after the September 30 meeting with Crump and Beck,
Davis filed criminal simple battery charges against Crump, which Crump was notified of
on October 3, 2013.  Docs. 11-4 ¶ 26-26, at 17; 11-10 at 103:17-106:24; 11-12 at
119:16-120:6.  Davis claims he accidentally filed his claim against Crump—that his
daughter put Crump's name where Beck's name was supposed to be listed.  Doc. 11-10
at 105:21-106:7.  But the charges were dismissed for want of prosecution after Davis
failed to appear at a November 21, 2013 hearing.  Docs. 11-4 ¶ 27, at 17; 11-12 at
119:16-120:6.  Meanwhile, Davis also filed charges against Beck.  Doc. 11-10 at
108:11-108:23, 114:14-21.

Despite filing these charges against Crump and Beck, of which there was no
discussion between Davis and anyone at Lakay, Davis continued to work for Lakay, with
no complaints about Beck, until February, 2014.  Docs. 11-4 ¶¶ 24-25, 27, 29; 11-6 ¶¶

---

[3] For purposes of this motion, and drawing all inferences in favor of Davis where possible, the Court
assumes this threat was indeed made.

7-8; 11-10 at 109:11-17.  On February 20, 2014, Davis missed work to attend a hearing regarding his case against Beck and, after that day, never returned to work for Lakay. Doc. 11-10 at 118:5-17.  Davis did not tell anyone at Lakay that he would miss work on February 20, never informed anyone that he would not be returning to work, and, other than Crump's alleged threat five months earlier, was not told that he could not return. Docs. 11-4 ¶¶ 27, 29, 33; 11-6 ¶ 11; 11-10 at 118:5-17.  Indeed, both Gray and Crump only learned that Davis was no longer working for Lakay when they spoke to him later, after noticing his absence, and both state in their affidavits that they tried to convince him to keep working with Lakay.  Docs. 11-4 ¶¶ 30-32; 11-6 ¶¶ 9-10; 11-12 at 157:11-158:13.  However, Davis did not return to Lakay and claims that he assumed, based on Crump's alleged threats from five months prior, he could no longer return because he attended the February 20 hearing.  Doc. 11-10 at 117:4-118:14.

## B.    Sex Discrimination and Retaliation Claims

Davis presents no direct evidence that Lakay violated Title VII by discriminating him because of his gender or by retaliating against him for engaging in protected activity.[4]  But Davis can establish both of these claims in order to survive summary judgment using circumstantial evidence.  *See, e.g.*, *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008); *E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).  When a plaintiff relies on circumstantial evidence, the

---

[4] Davis does allege that Crump threatened to fire him if he went to court.  But this threat was too far removed from the alleged adverse action—that Davis was fired for attending a hearing five months later—to constitute direct evidence of retaliation.  *See Williamson v. Adventist Health Sys/Sunbelt, Inc.*, 372 F. App'x 936, 940 (11th Cir. 2010) ("To qualify as direct evidence of discrimination, we require that a biased statement by a decision-maker be *made concurrently with the adverse employment event*, such that no inference is necessary to conclude that the bias necessarily motivated the decision." (citations and quotation marks omitted)).

court determines the sufficiency of her claim through the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case, the test for which differs slightly depending on the nature of the claim.  If a plaintiff establishes a prima facie case, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  This burden of production means the employer "need not persuade the court that it was actually motivated by the proffered reasons" but must produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the plaintiff.  *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (quotation marks and citation omitted).  A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination.  *Id.*

Here, for Davis's gender discrimination and retaliation claims, the Court need not reach the second step of the *McDonnell Douglas* analysis because Davis fails to state a prima facie case.[5]

---

[5] The Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A plaintiff can always avoid summary judgment by creating a triable issue concerning the employer's discriminatory intent.  A plaintiff can do this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker.'"  *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  However, for reasons discussed throughout this order, Davis has not presented "a convincing mosaic of circumstantial evidence" that Lakay acted with discriminatory intent.

### 1. Adverse Employment Action/Materially Adverse Action

To establish a sex discrimination claim, an employee must prove he suffered an adverse employment action. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842 (11th Cir. 2000). Meanwhile, to establish a retaliation claim, an employee need only prove he suffered a materially adverse action that need not be related to his employment. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-62 (2006). But Davis bases both claims on his assertion that he was fired by Lakay, which he alleges was both discriminatory as to his gender and done in retaliation for protected conduct. *See generally* Doc. 1-1. Thus, here, the determination of whether Davis suffered an adverse action to establish a prima facie case for either claim is subsumed into one inquiry: whether Davis was actually fired by Lakay.

The undisputed evidence cannot support the conclusion that Davis was indeed fired. First, even accepting that Crump did in fact threaten to discharge Davis if he pursued legal claims, a threat of adverse employment action does not amount to an adverse employment action. *Van Der Meulen v. Brinker Intern.*, 153 F. App'x 649, 655 (11th Cir. 2005). Moreover, to prove he suffered an adverse action, a plaintiff must "demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1421, 1448-51 (11th Cir. 1998); *see also Van Der Meulen*, 153 F. App'x at 655 (applying Eleventh Circuit precedent that objective rather than subjective feelings should be considered in determining whether an action is "adverse"). Therefore, although Davis assumed he could not return to work because he attended the February 20 hearing, this subjective belief is irrelevant. Doc. 11-10 at 117:4-118:14; *cf. Doe*, 145 F.3d at 1448-51

(recognizing that, for an ADA claim, courts should not consider an employee's subjective feelings about the actions of an employer to determine adversity). Rather, what matters is whether a reasonable person would think that Davis had lost his job because he pursued legal charges against Crump and Beck, and there is no evidence from which a reasonable person could reach this conclusion.

According to Davis, he could not return to work because, in spite of Crump's threat, he "went to court" on February 20; but, in fact, he first went to court only a few days after Crump's alleged threat when he went to the courthouse and filed criminal battery charges against Crump. Docs. 11-10 at 103:17-106:24. And he did so a second time when he filed charges against Beck in November, 2013. *Id.* at 114:14-21. Moreover, Crump became aware of Davis's charges against himself on October 3, 2013 and those against Beck a few days after Davis filed the charges. Doc. 11-4 ¶ 26; 11-12 at 120:12-20. But Davis continued to work for Lakay until February 19, 2014, and, during those nearly five months after he first filed charges against Crump, there was no discussion between Crump, or any other Lakay employee, and Davis regarding either the charges against Beck or Crump. Docs. 11-4 ¶ 27; 11-10 at 104:19-25, 104:3-12, 109:2-6; 11-12 at 121:14-122:10.

Even if Davis believed he had not actually gone to court until the February 20 hearing, from the undisputed evidence, there was no reasonable basis for him to believe he had actually been fired. Docs. 11-4 ¶ 30, 33; 11-6 ¶ 11. It is undisputed that Crump needed a cement finisher and did not want to lose Davis. Doc. 11-4 ¶ 32. Indeed, Crump and Gray state that they called Davis and tried to convince him to continue working with Lakay, although Davis testified he did not recall those

conversations. *Id.* 11-4 ¶ 32; Docs. 11-6 ¶ 9; 11-12 at 152:4-16, 156:11-20. This despite Davis filing criminal charges against Beck and Crump, his missing work on February 20 without prior notice, and his leaving the job without notifying anyone at Lakay. Docs. 11-4 ¶¶ 29, 33; 11-6 ¶ 9.

Finally, Lakay has presented undisputed evidence that Davis quit his job for more lucrative employment. First, the separation notice filed with the Georgia Department of Labor states, next to reason for separation, "Employee quit. Unhappy with job." Doc. 11-13 at 63. And Lakay opposed Davis's claim for unemployment benefits, claiming that he quit his job and was not fired. *Id.* at 75. Billy Gray testified that, when he spoke with Davis about leaving Lakay, "the sole reason [Davis] provided for leaving Lakay was that he could make more money elsewhere." Doc. 11-5 ¶ 9. He stated that Davis told him he "[had] some other job where he [could] make more money working three days than he could working five days for Lakay." Id. ¶ 8. Similarly, Jeff Gray stated Davis told him "he could make more money working elsewhere." Doc. 11-6 ¶ 4. Other co-workers, Gonzalo Lopez, Malcolm Radford, Larry Perry, stated it was their "understanding" that Davis quit working for Lakay for higher paying jobs. Docs. 11-7 ¶ 8; 11-8 ¶ 6; 11-9 ¶ 6.

From the undisputed evidence, a reasonable jury could not find that Davis was discharged from his employment with Lakay. Accordingly, Lakay has proven it is entitled to judgment as a matter of law regarding Davis's sex discrimination and retaliation claims.

Additionally, as stated in the following sections, Davis failed to establish other prima facie elements for these claims.

### 2. Sex Discrimination Claim

In addition to an adverse employment action, to prove sex discrimination, a plaintiff must also establish:  (1) he is a member of a protected class; (2) his employer treated a similarly situated employee who was not a member of the protected class more favorably or replaced the plaintiff with someone outside his protected class; and (3) he was qualified for the job he held.[6]  *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005); *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842-43 (11th Cir. 2000).  Here, the undisputed facts show that Davis worked on an all-male work crew and, thus, there were no similarly situated employees outside his protected class for his employer to treat more favorably.[7]  Further, it is undisputed that Davis was not replaced by a female employee.  Doc. 11-4 ¶ 37.  Accordingly, Davis cannot establish a prima facie case, and Lakay has proven it is entitled to summary judgment on this claim.  *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("If a plaintiff fails to show . . . a similarly situated employee, summary judgment is appropriate").

### 3. Retaliation Claim

To prove a Title VII retaliation claim, in addition to a materially adverse action, a plaintiff must also establish:  "(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression."  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311

---

[6] For the purposes of this motion, Lakay does not dispute that Davis was in a protected class and was qualified for his job.

[7] Lakay had one female employee, Crump's wife, who worked in the office.  Docs. 11-2 ¶¶ 20-21; 11-4 ¶ 12.  But this position is in no way similar to that of Davis, cement finisher, and, thus, she was not similarly situated.

(11th Cir. 2002).  The Defendants do not dispute that Davis engaged in protected activity.  As stated, based on the undisputed evidence, Davis has not established a materially adverse action.  Thus, Davis has necessarily not established that any adverse action was causally related to his protected speech.

Moreover, other than the sequence of events, there is no evidence from which a jury could find Davis's protected activity was causally related to the end of Davis's employment with Lakay.  When a plaintiff attempts to prove causation through temporal proximity alone, the time between the protected conduct and the adverse action must be "very close."  *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)).  "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  *Id.* (citations and quotations omitted); *see also Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Davis first filed criminal charges—the simple battery charges against Crump—a few days after the September 30, 2013 meeting between himself, Crump, and Beck.  Docs. 11-4 ¶¶ 26-27; 11-10 at 103:17-106:24.  Crump received notice of these charges on October 3, 2013.  Doc. 11-4 at 17.  Meanwhile, Davis filed criminal charges against Beck in November, 2013, and Beck told Crump of this a few days after received notice of the charge.  Doc. 11-10 at 107:13-108:23, 114:14-21; 11-12 at 120:12-20.  But Davis's last day of work at Lakay was February 19, 2014.  *Id.* at 118:5-14.  The time between this alleged adverse action and Davis's protected activity—over five months for his charges against Crump and over three months for his charges against Beck—is not

"very close." *See Thomas*, 506 F.3d at 1364 (stating a three-month period "without

more, does not rise to the level of 'very close'"); *Luke v. Bd. of Trustees Florida A&M*

*Univ.*, 674 F. App'x 847, 851 (11th Cir. 2016) (six-month period between protected

activity and termination was not "very close"); *Brown v. Ala. Dept. of Transp.*, 597 F.3d

1160, 1182 (11th Cir. 2010) ("Even a three-month interval between the protected

expression and the employment action . . . is too long."); *cf. Higdon*, 393 F.3d at 1220

(holding that "a period as much as one month between the protected expression and

the adverse action is not too protracted" to establish causation). Thus, based on the

undisputed evidence, Davis cannot establish causation, and, thus, Lakay has shown it

is entitled to judgment as a matter of law.[8]

## C. Harassment/Hostile Work Environment Claim[9]

To establish a hostile-environment sexual-harassment claim, Davis must

establish: (1) he "belongs to a protected group;" (2) he "has been subject to unwelcome

---

[8] To the extent Davis seeks to prove causation through Crump's threat to fire him if he went to Court, Crump allegedly made this threat on September 30, 2013, which was also nearly five months prior to the supposed adverse action and, thus, also too far removed to support causation. Doc. 11-10 at 102:13-103:13.

[9] Although unclear from his complaint, Davis testified that his sexual harassment claim is based solely on his co-worker Beck's conduct. Doc. 11-10 at 138:19-22. Thus, this harassment is necessarily the basis for the hostile work environment claim. In *Johnson v. Booker T. Washington Broad. Serv., Inc.*, the Eleventh Circuit stated:

> Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action (traditionally referred to as "hostile work environment" harassment), and harassment that does result in a tangible employment action (traditionally referred to as "*quid pro quo*" harassment). *See generally Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 760–63 (1998). . . . All harassment by co-workers necessarily falls into the first *Ellerth* class, as co-workers cannot take employment actions against each other. *See id.* at 762 ("[O]ne co-worker ... cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor.").

234 F.3d 501, 508 (11th Cir. 2000). Beck was Davis's co-worker, and, thus, Davis's harassment action is of the type "traditionally referred to as hostile work environment." *Id.* (citation and quotation marks omitted). Therefore, even if Davis is attempting to state a distinct harassment and hostile work environment claim, those claims are analyzed as one. Further, the *McDonnell Douglas* burden-shifting framework does not apply to such cases. *Johnson*, 234 F.3d at 510-11 ("We are unwilling to read the *McDonnell Douglas–Burdine* framework into non-retaliation sexual harassment cases at this point.").

sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature;" (3) that the harassment was "based on [his] sex;" (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) "a basis for holding [his] employer[, Lakay,] liable." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)). Lakay argues Davis cannot meet the third, fourth, and fifth elements.

### 1. The Harassment Was Not Based on Davis's Sex

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.*; *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 813 (11th Cir. 2010). In same-sex harassment cases, a plaintiff may make such a showing by establishing (1) the harasser was homosexual and motivated by sexual desire; (2) that the harasser had a general hostility towards those of the same sex; or (3) that the harasser treated one sex differently than the other. *See Oncale*, 523 U.S. at 80-81; *see also Stancombe v. New Process Steep LP*, 652 F. App'x 729, 734 (11th Cir. 2016).

First, there is no evidence that Beck was homosexual and motivated by any sexual desire towards Davis, other than Davis's testimony that Beck said he "f---ed men." Doc. 11-10 at 96:11-12. The evidence shows that Beck was either engaged in a

relationship with a woman or married throughout the time he and Davis were employed at Lakay. Doc. 11-4 ¶ 39. Further, there is no evidence that Beck had a general hostility towards men or that he treated men differently than women. Beck and Davis worked together on an all-male crew. *Id.* ¶ 12. In fact, Lakay employed only one female office worker while Davis and Beck were employed. *Id.* Moreover, it is undisputed that Lakay received no complaints about Beck from any other employees. *Id.* ¶ 13. Accordingly, it cannot be said that Beck had a general hostility towards other men or that he treated one sex differently than the other.

### 2. The Harassment Was Not Sufficiently Severe and Pervasive

To prevail on a hostile work environment claim, a plaintiff must establish "[their] workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [their] employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)); *see also Johnson*, 234 F.3d at 509. A plaintiff must establish he subjectively perceived the harassment to be severe and pervasive and that this subjective belief was objectively reasonable. *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 806 (11th Cir. 2012) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)).

It is undisputed that Davis subjectively perceived the harassment to be severe and pervasive. To determine if this belief was objectively reasonable, the Court must look at the totality of the circumstances, including: "'(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably

interferes with the employee's job performance.'" *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 295 (11th Cir. 2012) (quoting *Miller*, 277 F.3d at 1275); *see also Mendoza*, 195 F.3d at 1246.  When considering these factors, the Court must consider "the social context in which particular behavior occurs," especially with same-sex harassment.  *See Oncale*, 523 U.S. at 81.  In an all-male environment, certain behavior may be considered socially acceptable that would not be considered acceptable in interactions between genders.  *See id.*  "[T]he ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not violations of Title VII.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation marks and citation omitted); *see also Guthrie*, 460 F. App'x at 806 ("Title VII is not a 'general civility code,' and simple teasing . . . offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment." (citation and quotation marks omitted); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001).

Here, Davis alleges that Beck:  "tr[ied] to fight [him] and tri[ed] to feel on [him]"; "grabb[ed] on [him]" and "rubb[ed] on [him] and stuff" when he was getting water; talked about how "[Beck] f---ed men and stuff"; and said "gay jokes and stuff."  Doc. 11-12 at 85:22-86:4, 95:8-19; 96:1-12.  Although certainly inappropriate, this behavior is not objectively severe or humiliating, especially when viewed within the social context of an all-male construction crew.  And, besides the day of the September 27 incident, there is no evidence that the harassment interfered with Davis's work.  Moreover, according to Davis's testimony, the harassment was infrequent—occurring "every now and then" or "about five or six" occasions over a four-month period.  Doc. 11-10 at 94:8-28; 95:1-12.

In context, the harassment by Beck is more akin to "simple teasing or roughhousing among members of the same sex" than "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *See Oncale*, 523 U.S. at 81; *see also Guthrie*, 460 F. App'x at 807 (describing harassment, which included grabbing the plaintiff's buttocks, expressing a desire to "f--- her," "lick her all over," "be her first black," "lick her ass," and "eat her p---y," among other things, to be "rude and boorish, but fall[ing] short of . . . severe and pervasive harassment necessary to support [a hostile work environment] claim").

Considering the totality of the circumstances, there is no genuine issue of material fact that Beck's alleged harassment was not objectively severe and pervasive and, thus, did not create a hostile working environment.

### 3. Lakay Cannot Be Held Responsible for Beck's Harassment

Finally, Davis cannot demonstrate a basis for holding Lakay liable for the harassment he suffered. *See Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000). It is undisputed that Beck was Davis's co-worker and not his supervisor. Accordingly, Lakay "is liable [for Beck's behavior] only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Specifically, Davis must prove Lakay "knew . . . or should have known . . . of the harassment and failed to take remedial action." *Breda*, 222 F.3d at 889. "The remedial action must be reasonably likely to prevent the misconduct from recurring." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996).

The undisputed facts show that Lakay took reasonable remedial action after learning of Beck's harassment. Crump, the CEO and president of Lakay, became

aware of the harassment several days before the September 27 incident when Davis notified him of Beck's harassment, complaining that Beck was "cutting the fool, . . . rubbing on [Davis], [and] touching on [Davis]" but providing no other details. Docs. 11-4 ¶ 14; 11-10 at 96:12-14; 11-12 at 114:3-10. Crump then met with Beck and Davis concerning the allegations. Docs. 11-4 ¶¶ 15-16; 11-5 ¶ 5; 11-12 at 92:8-21. Beck admitted to harassing Davis, and Crump admonished him, telling him he would be fired if the behavior continued. Docs. 11-4 ¶ 16. Crump then received no further complaints until the September 27 incident, after which Crump told Davis to come to him with any problems in the future and moved Davis and Beck to different work crews. Docs. 11-4 ¶ 23-25; 11-5 ¶¶ 7-8; 11-10 at 109:2-6; 11-12 at 118:21-119:6, 139:24-140:1, 165:24-166:4. These measures were not only reasonably likely to prevent future harassment, but it appears they were successful—Davis worked for Lakay for five more months without future issues with Beck, except for "little stuff" like when Beck "slung mud all over everybody." Docs. 11-4 ¶¶ 24-25; 11-5 ¶¶ 7-8; 11-10 at 109:2-17.

Thus, according to the undisputed facts, Lakay became aware of the harassment and then took appropriate measures. Accordingly, there is no material issue regarding whether Davis has stated a basis for holding Lakay liable for the harassment by Beck.

In sum, Lakay has proven there is no genuine fact dispute regarding Davis's hostile work environment claim and that Lakay is entitled to judgment as a matter of law.

**D.    State Law Claims**

As stated, Lakay is entitled to summary judgment regarding Davis's federal claims. Thus, the Court declines to extend jurisdiction over Davis's state law claims, and those claims are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Crosby*

*v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) (stating that, when a court declines to exercise jurisdiction over state law claims, those claims should be "dismissed without prejudice so that the claims may be refiled in the appropriate state court").

### III. CONCLUSION

Davis's motion to dismiss pursuant to Rule 41(a)(2) (Doc. 18) is **DENIED**. Further, Lakay's motion for summary judgment (Doc.11) is **GRANTED**, and Davis's federal claims are **DISMISSED with prejudice**. Additionally, the Court declines to extend jurisdiction over Davis's state law claims, and those claims are **DISMISSED without prejudice**.

**SO ORDERED**, this the 11th day of April, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT